361 F.3d 1355
 INTERNATIONAL RECTIFIER CORPORATION, Plaintiff-Appellee,
v.
SAMSUNG ELECTRONICS CO., LTD. and Samsung Semiconductor, Inc., Defendants-Appellants, and
Ixys Corporation, Non Party-Appellant.
International Rectifier Corporation, Plaintiff-Appellee,
v.
Samsung Electronics Co., Ltd. and Samsung Semiconductor, Inc., Defendants-Appellants.
 No. 02-1324.
 No. 02-1334.
 No. 02-1370.
 No. 02-1428.
 No. 03-1046.
 United States Court of Appeals, Federal Circuit.
 March 18, 2004.
 
 Glenn W. Trost, Coudert Brothers LLP, of Los Angeles, CA, argued for plaintiffs-appellees in 02-1324, etc. and 03-1046. With him on the briefs for International Rectifier Corporation, was David E. Killough, Vinson & Elkins L.L.P., of Austin, TX.
 Mark Fowler, Gray Cary Ware & Freidenrich LLP, of Palo Alto, CA, argued for defendants-appellants in 02-1324, etc. and 03-1046. With him on the briefs were John W. Schlicher and Michael G. Schwartz. Of counsel in 02-1234, etc., were Mary A. Lehman, Gray Cary Ware & Freidenrich LLP, of San Diego, CA; and Marcelle E. Mihaila, Gray Cary Ware & Freidenrich LLP, of Seattle, WA; and of counsel in 03-1046 was Marcelle E. Mihaila.
 Roger L. Cook, Townsend and Townsend and Crew LLP, of San Francisco, CA, argued for non party-appellant Ixys Corporation in 02-1324, etc. With him on the brief was Nancy L. Tompkins.
 Before NEWMAN, LINN, and PROST, Circuit Judges.
 LINN, Circuit Judge.
 
 
 1
 This opinion addresses two appeals. Both appeals stem from contempt proceedings following the entry of a permanent injunction barring Samsung Electronics Co., Ltd., and Samsung Semiconductor, Inc. (collectively "Samsung"), from making, using, offering for sale, selling, or importing into the United States any components, devices, or products infringing U.S. Patent No. 4,959,699 ("the '699 patent"), owned by International Rectifier Corporation ("IR"). Int'l Rectifier Corp. v. Samsung Semiconductor, Inc., No. CV-98-00433-R (C.D.Cal. Jan. 8, 1999) ("Permanent Injunction"). The Permanent Injunction excepted from any finding of infringement products made by Samsung on a foundry basis for nonparty IXYS Corporation ("IXYS"), based on IXYS's designs. Id. at para. 3.
 
 
 2
 In the appeal first listed in the caption, Samsung and IXYS (collectively "appellants") appeal the district court's Interim Findings of Fact and Conclusions of Law regarding contempt and the district court's subsequent denial of IXYS's motion to clarify, vacate, or modify the injunction. Int'l Rectifier Corp. v. Samsung Semiconductor, Inc., No. CV-98-00433-R (C.D.Cal. Mar. 19, 2002) ("Findings of Fact"); Int'l Rectifier Corp. v. Samsung Semiconductor, Inc., No. CV-98-00433-R (C.D.Cal. Apr. 2, 2002) ("Denial Order"). In that appeal, the appellants assert that the district court abused its discretion by: (a) impermissibly expanding the scope of the Permanent Injunction to encompass activities of Samsung occurring wholly outside of the United States; (b) improperly entertaining summary contempt proceedings on the previously excepted IXYS-designed devices; and (c) holding IXYS bound to the Permanent Injunction as to the IXYS-designed devices. In the second listed appeal, Samsung appeals the district court's order holding Samsung in contempt of the Permanent Injunction. Int'l Rectifier Corp. v. Samsung Semiconductor, Inc., No. CV-98-00433-R (C.D.Cal. Oct. 2, 2002) ("Contempt Order"). Samsung argues, inter alia, that the district court's finding of contempt is an abuse of discretion for the reasons argued in the first appeal and because it is based, at least in part, on findings made in a separate lawsuit in which Samsung was not a party.
 
 
 3
 Because the district court abused its discretion in determining that Samsung's extraterritorial activities violated the Permanent Injunction, and because there is no evidence to support the district court's assertion that Samsung and IXYS had agreed to subvert the application of the injunction, nor is there any evidence to support the conclusion that IXYS was aiding, abetting, or otherwise acting "in active concert or participation with [Samsung]," Fed.R.Civ.P. 65(d), we: (1) reverse the district court's Contempt Order; (2) reverse the district court's denial of IXYS's motion to clarify, vacate, or modify the injunction; and (3) vacate any of the district court's findings of fact to the contrary, upon which the district court's Denial Order and Contempt Order were based.
 
 BACKGROUND
 
 4
 This case dates back to 1998, when IR sued Samsung for, among other things, infringement of the '699 patent. The '699 patent is directed to vertical planar power metal-oxide semiconductor (VPPM) transistor devices, such as metal-oxide-semiconductor field effect transistors (MOSFETs) and insulated gate bipolar transistors (IGBTs). Following the entry of two preliminary injunctions against Samsung, directed first to a specific Samsung device and then to any Samsung power MOSFET covered by the '699 patent, the parties settled their dispute. Pursuant to the settlement, the parties proposed a consent judgment that was entered by the district court on January 8, 1999. The consent judgment included a permanent injunction. See Findings of Fact at paras. 1-5. In stipulating to the consent judgment and injunction, the parties resolved all infringement issues concerning Samsung's products but, in a written exception to the injunction, reserved for another day the issue of infringement as to products made by Samsung for IXYS on a foundry basis to IXYS specifications. See Permanent Injunction at para. 3. Following the entry of the consent judgment, Samsung ceased making, offering for sale, selling, or importing into the United States any power MOSFET devices.
 
 
 5
 Shortly after the Permanent Injunction became effective, Samsung sold its power MOSFET business to Fairchild Semiconductor. Following that sale, the only facet of Samsung's power MOSFET business that remained in Samsung's hands was the fabrication of IXYS-designed devices at Samsung's foundry in South Korea under an existing fabrication agreement between Samsung and IXYS. Although IXYS sought to have Samsung import these devices into the United States under the exception to the injunction, Samsung steadfastly refused. Instead, Samsung agreed to sell IXYS GmBH, an IXYS subsidiary located in Germany, uncut, unpackaged wafers that were precursors of the IXYS-designed MOSFET devices. These sales were made by Samsung in Korea, and the devices were delivered to IXYS in Germany. IXYS, or one of its vendors, subsequently diced the wafers into individual chips, packaged the wafers into commercial products, and performed any necessary testing. At least some of IXYS's completed devices were sold by IXYS to its customers in the United States.
 
 
 6
 Two years after the entry of the Permanent Injunction, IR initiated contempt proceedings against Samsung and IXYS for violating the injunction based on sales of the IXYS-designed and Samsung-manufactured devices in the United States. On February 15, 2001, the district court ordered Samsung and IXYS to show cause why they should not be found in contempt. Hearings were held in March 2001 and May 2001. On February 25, 2002, IXYS filed a motion to clarify, vacate or modify the Permanent Injunction as it pertained to IXYS-designed devices. In due course, the district court denied the motion in its Denial Order.
 
 
 7
 On March 19, 2002, the district court issued its Findings of Fact but specifically deferred findings and conclusions on the "substantial open issues and infringement questions" of whether the IXYS-designed devices infringed, pending the outcome of a separate lawsuit between IR and IXYS over the same alleged infringing activity. Findings of Fact at paras. 15, 59. Samsung was not a party to that litigation. On May 21, 2002, the district court entered summary judgment in favor of IR in the separate infringement lawsuit between IR and IXYS. Int'l Rectifier Corp. v. IXYS Corp., No. CV-00-6756-R (C.D.Cal. May 21, 2002). This judgment is the subject of a separate appeal before this court. Int'l Rectifier Corp. v. IXYS Corp., No. 02-1414. On October 15, 2002, the district court entered its Contempt Order, based on the March 19, 2002 Findings of Fact and the finding of infringement in the separate action between IR and IXYS, discussed above, to which Samsung was not a party. Subsequent to the entry of the Contempt Order, IR submitted a paper titled "Proposed Additional Findings of Fact and Conclusions of Law re Contempt," which the district court adopted on December 11, 2002. See Int'l Rectifier Corp. v. Samsung Semiconductor, Inc., No. CV-98-00433-R (C.D.Cal. Dec. 11, 2002) ("Additional Findings of Fact").
 
 
 8
 Samsung and IXYS filed timely appeals from the respective Denial Order and Contempt Order. This Court has jurisdiction under 28 U.S.C. § 1292(c)(1), (2) and § 1295(a)(1) (2000).
 
 ANALYSIS
 A. Standard of Review
 
 9
 A court may grant an injunction in a patent infringement case "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (2000); Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 881 (Fed. Cir.1995). District courts have broad discretion in determining the scope of injunctive relief, and this court reviews a district court's decision granting, denying, or modifying an injunction, in a patent case, for abuse of discretion, applying Federal Circuit law. Carborundum Co., 72 F.3d at 881. Likewise, we review a district court's finding of contempt of an injunction, by infringement, for an abuse of discretion, again applying Federal Circuit law. KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1532 (Fed.Cir.1985). Clear and convincing evidence of infringement must support a district court's finding of contempt of an injunction. Id. An abuse of discretion may be established under Federal Circuit law by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding. Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 772 (Fed. Cir.1993).
 
 
 10
 B. Denial of IXYS's Motion to Clarify, Vacate, or Modify
 
 
 11
 The appellants first argue that the district court abused its discretion in denying IXYS's motion to clarify, vacate, or modify the injunction after the district court determined: (1) that Samsung's extraterritorial conduct invoked liability under the Permanent Injunction, Findings of Fact at paras. 30-31; (2) that IXYS's conduct invoked liability under the Permanent Injunction, id. at paras. 32-36; and (3) that the IXYS-designed devices may be subject to summary contempt proceedings, id. at paras. 56-59; see also Denial Order. Each of these findings, according to appellants, represents an impermissible expansion of the scope of the Permanent Injunction. Thus, appellants contend that the denial of IXYS's motion was in error.[1]
 
 
 12
 The three findings that appellants challenge raise two questions: (1) did the behavior engaged in by the particular party invoke liability under the injunction; and (2) was the device at issue within the scope of the injunction. We will consider each of the findings in turn.
 
 1. Conduct by Samsung
 
 13
 The appellants argue that the district court erred in impermissibly expanding the Permanent Injunction to cover Samsung's activities occurring wholly outside of the United States and that the district court's basis for this expansion, an alleged agreement between Samsung and IXYS to subvert the Permanent Injunction, has not been shown. IR responds that the district court was empowered to so expand the injunction and that the district court's finding that an agreement existed between IXYS and Samsung was supported by clear and convincing evidence.
 
 
 14
 The Permanent Injunction "prohibits [Samsung] from making, using, offering for sale or selling in or importing into the United States the components, devices or products infringing any claim of [the '699 patent]." This language tracks section 271(a) of the Patent Act, which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States ..., infringes the patent." 35 U.S.C. § 271(a). Based on the express language of both the Permanent Injunction and section 271(a), neither applies to conduct outside of the United States.
 
 
 15
 Further, it is well known that United States patent laws "do not, and were not intended to, operate beyond the limits of the United States." Brown v. Duchesne, 60 U.S. 183, 195, 19 How. 183, 15 L.Ed. 595 (1856); see also Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) (confirming that the patent system "makes no claim to extraterritorial effect," id. at 531, 92 S.Ct. 1700, and that "it is not an infringement to make or use a patented product outside of the United States," id. at 527, 92 S.Ct. 1700); Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1251 (Fed.Cir.2000) (holding that "extraterritorial activities, however, are irrelevant to the case before us, because the right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a foreign country" (internal citation omitted)).
 
 
 16
 It is undisputed that Samsung's actions did not take place within the United States. Findings of Fact at paras. 21-31. Therefore, under the language of the Permanent Injunction, as well as patent law precedent, Samsung's actions do not violate the injunction. Rather, the district court imputed IXYS's conduct to Samsung, concluding that there "was an agreement between Samsung and IXYS for IXYS to import MOSFET wafers into the United States." Id. at para. 30. The district court further concluded that "Samsung cannot accomplish indirectly through IXYS that which Samsung is prohibited by the injunction from doing directly." Id. at para. 31. In support of this basis for liability, the district court cited Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945) ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."), and Roe v. Operation Rescue, 54 F.3d 133, 139 (3d Cir. 1995) ("[A]n instigator of contemptuous conduct may not absolve himself of contempt liability by leaving the physical performance of the forbidden act to others." (internal citations omitted)).
 
 
 17
 The district court's conclusion that Samsung's extraterritorial actions are contemptuous is flawed in two respects. First, none of the cases cited by the district court purports to extend the scope of liability under the Patent Act beyond the territorial boundaries of the United States. The district court's "subversion by agreement" theory is tantamount to conspiracy to infringe a patent, a theory which has no basis in law. Cf. Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989); see also Cognitronics Imaging Sys., Inc. v. Recognition Research Inc., 83 F.Supp.2d 689, 699 n. 15 (E.D.Va.2000) (noting that "there is no statute in the federal laws concerning patents which gives rise to a cause of action for `conspiracy'"). Thus, there is no legal support for the district court's conclusion.
 
 
 18
 Second, even if a legal basis were apparent, the district court's finding of an agreement to subvert the injunction is not supported by any evidence, let alone the clear and convincing evidence required in a contempt proceeding. While there is evidence of a fabrication agreement between Samsung and IXYS, that agreement pertains only to the manufacture and delivery of IXYS-designed devices outside of the United States. That IXYS may then import the devices into the United States is not part of the agreement. Moreover, there is no evidence that Samsung exercises any control over IXYS or participates in any activities of IXYS following delivery of the precursors of the IXYS-designed MOSFET devices to IXYS in Germany. It is undisputed that Samsung and IXYS are separate, unaffiliated companies, and that IXYS acts independently of Samsung. Therefore, even if IXYS were found to engage in a prohibited act, there is no basis for attributing that act to Samsung. See, e.g., Tegal Corp. v. Tokyo Electron Co., 248 F.3d 1376, 1379 (Fed.Cir.2001) ("[C]ourts have held parties in contempt based on the conduct of others, but in that circumstance they have required proof that the party subject to contempt sanctions had control over those who engaged in the conduct proscribed by the injunction.").
 
 
 19
 The district court cites the fact that Samsung was aware that IXYS had imported IXYS-designed devices to the United States as proof of the purported agreement; yet, knowledge of IXYS's actions alone is not sufficient to support an allegation of collusion. The facts in evidence show that Samsung ceased making, selling, offering for sale, and importing into the United States all power MOSFETS after the entry of the Permanent Injunction. The evidence also establishes that Samsung refused to ship IXYS-designed devices to the United States, despite the exception in the injunction and the insistence of IXYS. On this record, the district court's finding of an agreement between IXYS and Samsung to violate the injunction is simply untenable.
 
 
 20
 Because it is undisputed that Samsung conducted no activity in the United States in violation of the agreement and because no evidence supports the district court's finding of an agreement to subvert the injunction, we find the district court's determination that Samsung's extraterritorial acts violate the injunction to be an abuse of discretion. Accordingly, we reverse the district court's Denial Order.
 
 2. Conduct by IXYS
 
 21
 The Permanent Injunction binds only Samsung "and/or those persons in active concert or participation with [Samsung] who received actual notice of this order." Findings of Fact at para. 4; see also Fed.R.Civ.P. 65(d). The express language of the injunction only applies to IXYS, a non-party to the injunction, if IXYS is "in active concert or participation" with Samsung. Alternatively, although the general rule is that injunctions cannot bind one who has not been made party to the case, a non-party may be held in contempt as an "aider or abettor." Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 96 F.3d 1390, 1394 (Fed. Cir.1996). "The only occasion when a person not a party may be punished is when he has helped to bring about ... an act of a party. This means that the [non-party] must either abet the defendant, or must be legally identified with him." Id. at 1395 (citations omitted).
 
 
 22
 The analysis relating to Samsung's liability, see Sect. B.1, supra, is equally apt here. The record shows that the only agreement between Samsung and IXYS is a fabrication agreement for the manufacture and delivery of devices outside of the United States. There is no evidence that Samsung exercises any control over IXYS, nor is IXYS legally identified or related in any way with Samsung. In short, there is simply no evidence that IXYS is in "active concert or participation" with Samsung to further any United States sales, nor is there evidence that IXYS is an "aider or abettor." Therefore, regardless of Samsung's activities, which we have concluded do not invoke liability in any case, IXYS, as a non-party, cannot be bound by the Permanent Injunction. The district court's denial of IXYS's motion to clarify, vacate or modify the Permanent Injunction as to IXYS is reversed.
 
 3. Devices at Issue
 
 23
 The appellants argue that the district court also erred in entertaining summary contempt proceedings as to infringement by the IXYS-designed devices, because that issue had been specifically reserved and had not been previously determined in the Permanent Injunction. Specifically, the appellants argue that summary contempt proceedings are inappropriate where there are open or substantial disputed issues of infringement, as there are here. See KSM, 776 F.2d at 1532; Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1349 (Fed. Cir.1998). IR argues that the finding of no open or substantial disputed issues of infringement was well within the district court's discretion.
 
 
 24
 Because we have concluded that neither Samsung nor IXYS has acted in violation of the Permanent Injunction, we need not and do not address the issue of whether the device at issue is subject to the injunction and summary contempt proceedings.
 
 C. Contempt Order
 
 25
 Based on our conclusion that Samsung's extraterritorial conduct does not violate the Permanent Injunction, see Sect. B.1, supra, we hold that the district court's Contempt Order, finding Samsung in contempt, is not supported by clear and convincing evidence and is erroneous as a matter of law. The Contempt Order is therefore reversed.
 
 
 26
 We have carefully considered all of the other arguments and find that they have no bearing on the outcome. Because Samsung, on the record before us, is not engaging in conduct prohibited by the Permanent Injunction, and because IXYS, as a non-party, is not bound by the Permanent Injunction, we reverse the district court's Denial Order and Contempt Order, and further, vacate as clearly erroneous any findings to the contrary.
 
 
 REVERSED-IN-PART AND VACATED-IN-PART
 
 COSTS
 
 27
 Costs are awarded to appellants Samsung and IXYS against IR.
 
 
 
 Notes:
 
 
 [1]
 Appellants also appeal from the district court's Findings of Fact. This court reviews judgmentsStratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540 (Fed.Cir.1983) ("We sit to review judgments, not opinions."). In reviewing a judgment, however, this court must determine if the facts found by the district court in support of its judgment were clearly erroneous. It is to this extent, and in this respect, that we consider appellants' arguments regarding the Findings of Fact. See, e.g., Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 856 F.2d 173, 176 (Fed.Cir.1988) ("Although we review findings in connection with our review of judgments, we do not review findings independently.").