Mary DOE et al., Appellants,

v.

GENERAL HOSPITAL OF the DIS-
TRICT OF COLUMBIA et al.,
Appellees.

No. 24011.

United States Court of Appeals,
District of Columbia Circuit.

March 20, 1970.

Mr. Michael Nussbaum, Washington, D. C., was on the motion for appellants. Mr. Gilbert C. Miller, and Miss Caroline Nickerson, Washington, D. C., also entered appearances for appellants.

Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton and David P. Sutton, Asst. Corporation Counsel, were on the opposition to the motion for appellees.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges, in chambers.

PER CURIAM:

This case is before us once again on a question pertaining to preliminary injunctive relief. Appellants Mary Doe and Jane Roe, for themselves and others similarly situated, seek to compel D.C. General Hospital to grant abortions to all women who desire them and who otherwise meet the standards for admission to the hospital. For themselves, the individual appellants sought orders compelling the hospital to provide them with therapeutic abortions.

On March 11, 1970, after a hearing, the District Court made findings of fact

and issued a preliminary injunction to restrain appellees from refusing to perform therapeutic abortions under the Hospital's own rules and regulations, 313 F.Supp. 1170 as these were found by the Court.[1] Appellants sought broader relief and moved here for summary reversal. We denied that motion so that the case could be fully briefed and argued. However, because of the critical importance of the matter to women in the class represented by appellants, we sought to clarify certain portions of the District Court's order that had apparently been misunderstood by the parties. In addition, as each individual appellant was nearing the end of the first trimester of her pregnancy,[2] we ordered the Hospital to process their applications for abortions without delay.

Almost immediately after the entry of our order, Mary Doe presented herself at the hospital. She brought with her a letter from an area mental health clinic psychiatrist recommending that she receive an abortion in order to safeguard her mental health. Contrary to the spirit, if not the letter of our order, Dr. Lowe, Chief of the Hospital's Department of Obstetrics and Gynecology, refused to permit an abortion to be performed. Acting upon instructions from his superiors, he insisted that Miss Doe first submit to an examination by a private consultant to the Department of Health, and that the consultant conclude that an abortion was required. He further advised Miss Doe that he could set no specific time for an abortion in any event, because he viewed thereapeutic abortion as an "elective procedure"[3] and only emergency measures would be taken on afternoons, weekends and holidays. Since further delay in performing the abortion could have serious consequences, Miss Doe arranged to procure an abortion outside of D.C. General Hospital. Believing that the hospital's action was in contempt of the orders of this and the District Court, appellants have moved to find the appellees in civil contempt.

Our order of March 12, 1970, concluded that, pending final resolution of the issues, persons in the class represented by appellants should be permitted to "receive an abortion upon a recommendation by a psychiatrist that the termination of the unwanted pregnancy may be necessary for the preservation of the patient's mental health." Neither this language nor the regulations as construed by the District Court support appellees' action in calling upon a private psychiatric consultant to scrutinize the diagnosis of an area mental health psychiatrist, particularly in view of the fact that appellees had expressly argued in court that consultation with area mental health psychiatrists, rather than with private psychiatrists, should be required. Nor does it appear that the services of a private consultant had ever been required by Hospital policy in the past.

Furthermore, Dr. Lowe's reluctance to commit Hospital facilities on the ground that therapeutic abortion is an "elective" procedure flies in the face of this court's finding that an emergency existed. The order requiring applications by Mary Doe and Jane Roe to be processed immediately was perfectly clear in this respect, and we find the claim of ambiguity tenuous at best. Nevertheless, we cannot completely rule out the possibility that the District Court's order be read to require strict adherence to the regulation that "two specific specialists" must concur in writing before an abor-

---

1. There was some controversy below with regard to what the hospital's regulations actually were. This controversy was resolved by specific findings of fact by the District Court.

2. Danger of an abortion to the pregnant woman increases substantially after the end of the first trimester.

3. Dr. Lowe did not suggest what the alternatives to this "elective procedure" might be. Presumably, they are birth of the child and the consequent injury or death to the mother that forms the basis for performing the abortion under the Hospital's regulations.

tion could be performed, in spite of the prior practice to the contrary.

Because of this possible confusion, and because Miss Doe has already obtained the relief she sought, we deny the motion to find appellees in contempt of court. However, it is apparent that further action on our part is necessary to prevent similar confusion in the future. We had hoped that the Hospital could devise interim procedures that would be adequate to deal with such emergency situations as might arise during the pendency of this litigation. But in view of the repeated conflicts between the parties and the continuing inaction on the part of the hospital, we reluctantly find it necessary to set forth in an Appendix to this opinion the conditions under which the District of Columbia General Hospital must perform therapeutic abortions on mental health grounds until this case is ultimately resolved on the merits. In so doing, we express no opinion whatsoever regarding the final resolution of this matter; our action is prompted by our conclusion that, if the contentions advanced by the plaintiffs in the District Court ultimately prevail, Jane Roe and the class she represents will have been seriously and irreparably harmed if interim relief is not available; whereas any injury done to the hospital by requiring it to perform the operations is of far lesser magnitude.

The motion to find appellees in contempt of court is denied. Appellees are directed, pending final resolution of this case by the District Court or further order of this Court, to process applications for abortions on mental health grounds according to the guidelines set forth in the Appendix to this opinion. This order is without prejudice to the Hospital's right to seek a modification of the prescribed procedures, if additional or alternative steps are deemed by it to be medically necessary, or appellants' right to seek modification if the procedure does not adequately protect the class they represent.

So ordered.

## APPENDIX

1. Any woman requesting a therapeutic abortion on mental health grounds should be received and her application processed with due regard for the urgency of the matter, particularly the extent to which her pregnancy has progressed in light of the fact that the abortion should be performed during the first trimester of the pregnancy.

2. The Hospital may inquire into residence and indigence, and previous medical history; and it may of course complete the other necessary admission procedures.

3. The patient should then be directed to a gynecologist who is willing to perform therapeutic abortions. The doctor may perform any preliminary medical examination and incidental medical tests necessary to verify pregnancy, to ascertain the stage of development, and to identify any possible medical contraindications to abortion.

4. The patient may establish psychiatric grounds for the abortion by presenting letters of recommendation from two area mental health clinic psychiatrists at the time of the initial examination. If the patient has not at that time seen a psychiatrist, the gynecologist should refer her to an area mental health clinic or, if he chooses, permit her to consult with a private psychiatrist willing to perform the service for the patient. The individual gynecologist will determine whether one or two psychiatric evaluations will be required. That is, he may require one or two recommendations from area mental health psychiatrists, or in lieu thereof he may accept recommendations from one or two private psychiatrists who are willing to perform the service for the patient.

5. If the patient satisfies the criteria above, the abortion should be scheduled and performed without delay. No further criteria may be added.

6. Appellees should take every step necessary to give immediate effect to

the above procedures pending final resolution of this case.

MacKINNON, Circuit Judge (concurring in part and dissenting in part):

This involved an attempt by the plaintiffs to make abortions of indigents in the District of Columbia free merely *on demand.* Abortion laws are under attack throughout the nation, but in my opinion these involve primarily a legislative problem. Such abortions are prohibited now by statute and requested changes in that statute should be addressed to Congress just as state legislatures elsewhere are considering such changes.

I concur in our refusal to find the individual defendants in civil contempt of this court's order. Without specifying all my grounds for so concluding, I consider it to have been wholly reasonable to require a second psychiatrist to examine the patient in view of the changing situation that resulted when the trial court struck down the Hospital's practice of not considering abortion requests on health grounds unless there had been no prior history of mental illness. Also, the psychiatrists' recommendation was woefully weak and the court order had not been received by the Director of the General Hospital nor by the Director of the Hospital's Department of Obstetrics and Gynecology. With the matter of the Hospital admission practices having been determined I would leave D.C. General to process any woman requesting a therapeutic abortion on mental health grounds in accordance with its own rules and regulations. The control and management of D.C. General Hospital and the making of rules and regulations relating to the admission of persons thereto and the management and control of that institution is vested by statute in the duly acting and appointed Government officials of the District of Columbia. D.C.Code, §§ 3–106, 3–107, 3–108. See also subsequent Reorganization Plans. The one order binding on the Hospital is that no previous history of mental health problem be required.

With this one alteration in their practices, the Hospital will be in conformance with their own rules and regulations and with the legislative policy established by Congress that recognizes that abortions are not criminal if they are "done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine." D.C. Code, § 22–201.

Having so acted, this court has exhausted its judicial powers. To the extent that it now by opinion seeks to establish regulations, even on an interim basis for the future to supplant perfectly valid Hospital regulations, it usurps the power vested by statute in the District of Columbia and acts in a purely legislative capacity. The management of the Hospital is for the Congress and officials of the District of Columbia. They are the ones who are to authorize or promulgate the governing regulations in the first instance. They are the ones to decide in conformance with established legislative policy what procedures should be followed and those regulations are only to be set aside if they are unreasonable. The duly constituted authorities have promulgated regulations dated January 27, 1970, attached hereto. I think those regulations are entirely adequate for the situation and that the proper governmental authorities should be authorized to proceed thereunder or to amend same as they consider may be necessary. For our court to arrogate unto itself the power to prescribe regulations is to assume legislative power it has never been given. Then the court goes farther, and undertakes to prescribe in general what is proper medical practice for the physicians and surgeons involved. The statute authorizes abortions "under the direction of a competent licensed practitioner of medicine," (D.C. Code, § 22–201) and the court is not empowered to substitute its direction for that of the licensed practitioner of medicine. The court here is usurping legislative powers and acting as the Supreme

Court of Parliament which Lord Coke described as "having transcendent jurisdiction to maketh, enlargeth, diminisheth, abrogateth, replaceth and resisteth laws, statutes, acts, and ordinances concerning matters, ecclesiastical, criminal, common, civil, martial and maritime." 2 Bacon, Abridgement p. 109.

In my opinion we should not promulgate any interim regulations and we should proceed in due course to hear and consider the matter on its merits.

*Memorandum* Government of the District of Columbia

Department, Public Health
Agency, Office: Maternal Health Div.
Date: January 27, 1970
TO: ALL PERSONNEL
FROM: Leroy A. Jackson, Jr., M.D.
       Chief, Maternal Health Division

SUBJECT: ABORTIONS

The Department of Public Health is now in the process of establishing its official policy concerning abortions in Washington, D.C.

Until official policy has been established, the following procedure will be followed:

1. Only residents of the District of Columbia eligible for care at D.C. General Hospital will be considered for therapeutic abortions.

2. Abortion may be performed only for the preservation of the physical and/or mental health of the mother or for pregnancy resulting from rape or incest.

3. Abortions on demand will not be considered.

4. Pregnancy will be confirmed at any of the public health maternity intake clinics by the physician i.e. Goles, Centers #17 and 18, or D.C. General Hospital.

5. Patients are then referred to one of the Area Mental Health Clinics for psychiatric evaluation if indicated.

6. If after psychiatric evaluation therapeutic evaluation is recommended, the patient is referred to D.C. General Hospital with signed forms being sent to Dr. Lowe's office.

7. In cases of confirmed rape or incest, patients are referred directly to D.C. General Hospital after confirmation of pregnancy.

Questions related to procedures and all out of city inquiries should be referred to this office—629–2121.

LAJ/ep