DYK, Circuit Judge,
with whom
Chief Judge RADER and Circuit Judges GAJARSA, LINN, and PROST join, dissenting-in-part.
While I join Parts A(l)-(3)(a) of the majority decision, I dissent from parts A(3)(b) and B. In particular, I dissent from the majority’s decision to uphold the finding of contempt of the disablement provision. In my view, the disablement provision does not bar the installation of modified software that renders the devices non-infringing, and, even if the provision were unclear, an unclear injunction cannot be the basis for contempt. The majority’s holding that lack of clarity provides no defense is inconsistent with established law reflected in numerous decisions of the Su *891 preme Court, our own court, and our sister circuits.
I also dissent from the majority’s decision to remand to the district court to determine whether EchoStar violated the infringement provision. In my view, that provision plainly was not violated. Finally, I dissent from the majority’s affirmance of the $90 million sanctions award, which was based in part on the finding of contempt of the infringement provision. If the contempt finding is set aside with respect to the infringement provision, the sanctions award must also be set aside.
I
Before today’s majority decision — upholding contempt of the disablement provision based on an apparently successful design-around — two principles seemed well established. The first of these was that accused infringers were encouraged to design around patent claims to achieve non-infringing products and methods. As this court has recognized, “designing new and possibly better or cheaper functional equivalents [of a competitor’s product] is the stuff of which competition is made.” State Indus. Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1235-36 (Fed.Cir.1985).[1] The second was that contempt sanctions could not be imposed for the violation of an injunction that failed to provide sufficient clarity. As the Supreme Court stated in Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 444, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), the “basic principle built into [Federal Rule of Civil Procedure] 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.” The majority has disregarded both principles with predictably unhappy consequences for the innovation community.
A
A crucial question in any contempt proceeding is whether the injunction bars the accused conduct. The “interpretation of the terms of an injunction is a question of law we review de novo.” Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1382 (Fed. Cir.2007). The disablement provision of the injunction here provided:
Defendants are hereby FURTHER ORDERED to, within thirty (30) days of the issuance of this order, disable the DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) ... of the Infringing Products that have been placed with the end user or subscriber.
J.A. 162 (emphasis added). Because other provisions are also pertinent, the entire injunction is included as an Appendix to this opinion.
TiVo and the district court essentially interpret this provision as barring designarounds (i.e., the substitution of non-infringing software for software found to infringe in the devices installed in customers’ homes). In its briefing to the panel, TiVo characterized the injunction as prohibiting the “continued provision of DVR functions through the exact units previously found to infringe — whether or not they have purportedly been modified by the downloading of new software.” Br. of Pl.Appellee TiVo, Inc. at 21, TiVo, Inc. v. *892 EchoStar Corp., No. 2009-1374 (Fed.Cir. Jun. 25, 2010). The district court similarly characterized the injunction as “not limited to infringing software.” TiVo, Inc. v. EchoStar Corp., 640 F.Supp.2d 853, 874 (E.D.Tex.2009) [hereinafter Contempt Opinion ]. The language of the injunction itself contradicts this interpretation.
First, contrary to TiVo’s argument, the definition of the term “Infringing Products” on its face does not simply refer to devices with particular model numbers; it requires that those products be “Infringing.” The term “Infringing Products” appears in the introductory paragraph of the injunction, which enters judgment “against Defendants for willful infringement ... by Defendants’ following DVR receivers (collectively the ‘Infringing Products’): DP-501; DP-508; DP-510; DP-522; DP-625; DP-721; DP-921; and the DP-942.” J.A. 161. The injunction was thus written to address devices with particular model numbers that had been found by the jury to be infringing. The verdict form itself is framed in terms of whether particular model numbers infringed. See Verdict Form at 2-3, TiVo, Inc. v. EchoStar Corp., No. 2:04-CV01 (E.D.Tex. Apr. 13, 2006), ECF No. 690. Thus it is not surprising that the injunction also made reference to those particular model numbers that were found to infringe. The evident purpose of the injunction was to award relief concerning the specific products found to infringe.
Second, interpreting the term “Infringing Products” as extending to non-infringing products is contradicted by the usage of the same term elsewhere in the injunction. In addition to the disablement provision, the term “Infringing Products” is also used in the infringement provision— barring continued infringement by the “Infringing Products ... and [those] products that are only colorably different” — and in the enablement provision — barring the enablement of “DVR functionality ... in any new placements of the Infringing Products.” [2] J.A. 162. Neither TiVo nor the district court interprets the injunction as barring design-arounds in other contexts (i.e., the installation of new, non-infringing software in new products or the substitution of new, non-infringing software in old products still on the shelves). For example, under the heading, “The Disablement Provision Does Not Prohibit EchoStar From Attempting To Design Around The Patent,” TiVo states explicitly that “Mottling in the injunction ... prevents EchoS-tar from providing DVR functions using new, non-infringing receivers.” Br. of Pl.Appellee TiVo, Inc. at 21. The district court adopted a similar interpretation. In finding EchoStar in contempt of the infringement provision, the district court did not rest its contempt finding on the fact that the model numbers were the same. Contempt Opinion, 640 F.Supp.2d at 871-73. Instead, the court’s contempt finding rests on the fact that the model numbers are the same and the accused products are not more than colorably different from those found to infringe. Id. If the infringement and enablement provisions barred the sale or placement of products bearing the listed model numbers regardless of infringement, there would have been no need to evaluate whether EchoS-tar’s modified products were “no more than colorably different” and “eontinue[d] to infringe.” Id. at 860-61.
*893 The inconsistency of the interpretation adopted by TiVo and the district court is particularly acute when the disablement and enablement provisions are compared. Identical language is used m the disablement provision, which deals with products that are already in the hands of customers, and enablement provision, which deals ^ ducts gtm on the ghel£
Disablement Provision
Enablement Provision
“Defendants are hereby FURTHER ORDERED to, within thirty (30) days of the issuance of this order, disable the DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) ... of the Infringing Products that have been placed with an end user or subscriber.” J.A. 162 (emphases
’’The DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) shall not be enabled in any new placements of the Infringing Products.” J.A. 162 (emphases added).
By using the same terminology in both the disablement and enablement provisions, it is clear that the injunction extends only to infringing software. It would be contrary to established principles of construction to give identical language a different meaning in one provision than the other. Nor can the use of the term “DVR functionality,” with the notation “disable all storage to and playback from a hard disk drive of television data,” distinguish the disablement provision from other provisions in which the term “Infringing Products” is used. The enablement provision also uses the term “DVR functionality” and describes it in the same manner as the disablement provision (“i.e., disable all storage to and playback from a hard disk drive of television data”). J.A. 162.
In the context of statutory construction, identical language is assumed to have the same meaning. See, e.g., Clark v. Martinez, 543 U.S. 371, 378, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005); Dept. of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 341-42, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994). In Clark, the Supreme Court held that identical language in two separate provisions of a statute must be interpreted in the same manner even though the two provisions had different purposes. 543 U.S. at 378-380, 125 S.Ct. 716. This basic principle of interpretation should apply to injunctions as well. Thus, the terms “Infringing Products” and “DVR functionality” must be interpreted consistently throughout the injunction. Under such a construction, the disablement provision would necessarily permit the replacement of the infringing software with new non-infringing software.
Third, the injunction does not explicitly address the issue of design-arounds, and TiVo’s proposed interpretation is clearly contrary to the established policy in favor of design-arounds discussed above. There is indeed a serious question as to whether, in light of this strong policy, the district court would even have the authority to issue an injunction barring design-arounds. This court has repeatedly instructed that injunctions in the patent context must be limited to restraints designed to prevent further infringement. See Riles v. Shell Exploration and Prod. Co., 298 F.3d 1302, 1311-12 (Fed.Cir.2002); Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1366-67 (Fed.Cir.1998); Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 772-73 (Fed.Cir.1993); Eli Lilly & Co. v. Medtronic, Inc., 915 F.2d 670, 674 (Fed.Cir.1990). Specifically, this court has recognized that “an injunction is only proper to the extent it is ‘to prevent the violation of any right secured by patent.’ ” Eli Lilly, 915 F.2d at 674 (quoting 35 U.S.C. § 283). For exam- *894 pie, in Riles we held that “an injunction cannot impose unnecessary restraints on lawful activity,” and thus concluded that enjoining the use of the entire product was improper where the defendant “may lawfully use its [product] without infringing.” 298 F.3d at 1311-12. Similarly, in Joy Technologies, we held that an injunction “which precludes [the defendant] from activities that are not necessary to prevent infringement of the patented process cannot stand.” 6 F.3d at 777. Absent explicit language, no reasonable attorney would read the disablement provision as barring design-arounds because such an injunction would likely exceed the district court’s authority. Here there is no such explicit language. For these reasons, it is clear that the injunction does not in fact bar design-arounds and that it permits the substitution of non-infringing software in existing products that are in the hands of customers, just as it permits the use of non-infringing software in identical devices not yet distributed to the customer.
B
Unlike the district court, the majority does not hold that the injunction clearly prohibits the accused conduct. Rather, the majority concludes that even if the injunction is unclear, the district court’s reading is “the most natural” and lack of clarity is not a defense in contempt proceedings.[3] Maj. Op. at 886. With respect, this position is untenable. The question here is not whether the injunction is invalid because it is vague. The question is whether contempt is appropriate where the injunction does not clearly prohibit the challenged conduct. The Supreme Court, our own court, and our sister circuits have clearly answered that question in the negative: An accused party cannot be held in contempt for violating an injunction which does not clearly reach the accused conduct. This is so because contempt is improper where there is “a fair ground of doubt” as to whether the defendant’s conduct is barred by the injunction. Cal. Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885); MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co., 767 F.2d 882, 885 (Fed.Cir.1985) (citing Cal. Artificial Stone Paving Co., 113 U.S. at 618, 5 S.Ct. 618). The fair ground of doubt principle is itself reflected in Rule 65(d) of the Federal Rules of Civil Procedure, which the Supreme Court has interpreted to require that an injunction contain a clear and unambiguous statement of “what the court intends to require and what it meant to forbid.” Int’l Longshoremen’s Ass’n v. Phila. Marine Trade Ass’n, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); see also Square Liner 360, Inc. v. Chisum, 691 F.2d 362, 378 (8th Cir.1982) (“An enjoined party ought not to be compelled to risk a contempt citation unless the proscription is clear.”).
The majority relies primarily on McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), to suggest that the requirement of clarity may be invoked only on direct appeal or by a motion to modify the injunction, and that, absent a successful appeal or modification, there can be no defense to a contempt charge based on a lack of clarity in the injunction. As discussed below, that novel theory is inconsistent with numerous cases subsequent to McComb in the Su *895 preme Court and courts of appeals holding that contempt is improper, even in the absence of a successful direct appeal or modification, if the injunction could reasonably be read not to prohibit the conduct on which the contempt allegation is based. McComb itself lends no support to the majority’s theory.
In order to understand the Supreme Court’s holding in McComb, it is essential to understand the facts of the case. The original decree enjoined violations of the Fair Labor Standards Act. Id. at 189, 69 S.Ct. 497. It also explicitly required the defendants to pay their employees a specific hourly rate of pay, compensate them for overtime, and keep adequate records. Id. The defendants were found in violation of the decree because they had (1) set up a “false and fictitious method of computing compensation without regard to the hours actually worked;” (2) “adopted a plan which gave the employees a wage increase in the guise of a bonus” to avoid paying overtime; (8) improperly classified some employees as “executive or administrative employees” (exempt categories); and (4) employed workers “in excess of the maximum workweek without paying them overtime compensation.” Id. at 190, 69 S.Ct. 497. The defendants argued that they could not be held in contempt because the “plan or scheme which they adopted was not specifically enjoined.” Id. at 192, 69 S.Ct. 497. The Supreme Court rejected this argument, noting that the defendants “were alerted by the decree against any violation of the specified provisions of the Act.” Id. The Court did not suggest that the decree (or the Act itself) was in any way unclear or that lack of clarity would not be a defense to contempt. Rather, the Court concluded that contempt was proper because the defendants’ actions were clearly prohibited by the decree. Id. To be sure, the Court stated: “Respondents could have petitioned the District Court for a modification, clarification or construction of the order.” Id. But the Court’s recognition that such relief existed “if there were extenuating circumstances or if the decree was too burdensome in operation,” is just that — the acknowledgment of an alternative remedy available where defendants had difficulty in complying with an otherwise clear decree. The Court in McComb did nothing to discard the “fair ground of doubt” standard set forth more than sixty years before in California Artificial Stone Paving. See 113 U.S. at 618, 5 S.Ct. 618.
Indeed, after McComb, the Supreme Court twice affirmed the principle that an accused party cannot be held in contempt for violating an injunction which does not clearly reach the accused conduct. See Granny Goose, 415 U.S. at 428, 94 S.Ct. 1113; Int’l Longshoremen’s, 389 U.S. at 76, 88 S.Ct. 201. In International Longshoremen’s, the parties disputed the meaning of a provision in a collective bargaining agreement. 389 U.S. at 65, 88 S.Ct. 201. The union argued that the “set-back” provision entitled the workers to a partial day’s pay when the start of their work day was postponed due to unfavorable weather conditions, while the employers argued that the workers were entitled to no more than one hour’s pay. Id. at 65-66, 88 S.Ct. 201. An arbitrator ruled that the employer’s reading of the set-back provision was correct, but the union refused to work unless the employers adopted the contrary interpretation. Id. at 66-68, 88 S.Ct. 201. At the request of the employers, the district court entered an order requiring the union “to comply with and to abide by [the arbitrator’s award].” Id. at 69, 88 S.Ct. 201. The district court later found the union in contempt of the order because it had engaged in a strike designed to require the employers to provide the increased set-back pay. Id. at 72, 88 S.Ct. *896 201. The Supreme Court reversed the contempt finding because “the order ... did not state in ‘specific ... terms’ the acts that it required or prohibited.” Id. at 76, 88 S.Ct. 201 (quoting Fed.R.Civ.P. 65(d)).
In Granny Goose, the district court issued a temporary restraining order without specifying an expiration date. 415 U.S. at 428, 94 S.Ct. 1113. Under the rule in effect at the time, the order would expire no later 'than twenty days after issuance. Id. at 432-33, 94 S.Ct. 1113. Prior to its expiration, the district court denied a motion to dissolve the order. Id. at 429, 94 S.Ct. 1113. After twenty days, the district court held the union in contempt for violation of the order. Id. at 425-26, 94 S.Ct. 1113. The union argued that contempt was improper because the order had expired before the date of the alleged contempt, id. at 430, 94 S.Ct. 1113, but the district court rejected this argument on the ground that its denial of the motion to dissolve had “effectively converted the order into a preliminary injunction of unlimited duration,” id. at 440, 94 S.Ct. 1113. The Supreme Court reversed the contempt finding, holding that “where a court intends to supplant such an order with a preliminary injunction of unlimited duration ..., it should issue an order clearly saying so.” Id. at 444-45, 94 S.Ct. 1113. “And where it has not done so, a party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65(b).” Id. at 445, 94 S.Ct. 1113. The Court noted that the “basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.” Id. at 444, 94 S.Ct. 1113.
Despite the majority’s assertion that, under McComb, “[t]he burden was clearly on EchoStar to seek clarification or modification from the district court,” Maj. Op. at 886, no other court has read McComb in this way. In cases which are quite similar to the present case, courts of appeals, including ours, have consistently held that contempt is inappropriate where the injunction does not clearly prohibit the accused conduct. For example, in Abbott, an injunction barred Apotex from “commercially manufacturing, using, selling, offering to sell, or importing into the United States generic divalproex sodium which the Court has found to be infringing.... ” 503 F.3d at 1376. Apotex was found in contempt for violating the injunction by filing an Abbreviated New Drug Application (“ANDA”) for a generic divalproex sodium with the Food and Drug Administration. Id. at 1375. This court reversed the contempt finding because the injunction did not clearly prohibit the conduct on which the contempt allegation was founded, stating that “we cannot agree that Apotex’s actions actually violated the original injunction” because “[t]he injunction contains no ‘explicit notice’ to Apotex that the filing of a new ANDA ... was forbidden.” Id. at 1382-83. We noted that Rule 65(d) requires that “those enjoined receive explicit notice of precisely what conduct is outlawed.” Id. at 1382. “These concerns have led courts to construe injunctions narrowly where, as here, they failed to give adequate notice that particular conduct was enjoined.” Id. at 1382-83.
In New York Telephone Co. v. Communications Workers of America, 445 F.2d 39, 48 (2d Cir.1971), a temporary restraining order barred the unions “from engaging in ... any strike, work stoppage, boycott of overtime work, slowdown or any other form of interference with the business of plaintiff.” Id. at 43. In the interest of reaching a settlement, the parties agreed to extend this order indefinitely. Id. An agreement was reached and the work stoppage ended, but several months *897 later the workers commenced a strike over a different issue than the one leading to the original order. Id. The district court found the unions in contempt of the earlier restraining order because its plain language barred “any strike.” Id. at 43-44. On appeal, the Second Circuit reversed the contempt finding. Id. at 51. The court concluded that “despite the broad language” of the order, the order clearly “was meant to apply and should only be applied to the [dispute occurring at the time of its issuance].” Id. at 46. Additionally, the court noted that “[ejven if we considered the restraining order’s scope to be a closer issue, several policy considerations [e.g., the clarity requirements of Rule 65(d) ] counsel us to resolve all ambiguities in favor of the unions.” Id. at 48.
In Common Cause v. Nuclear Regulatory Commission, 674 F.2d 921, 924 (D.C.Cir.1982), the district court held that the Nuclear Regulatory Commission had acted unlawfully in closing a budget meeting to the public. The district court issued an injunction enforcing the Sunshine Act, 5 U.S.C. § 522b (1976), and prohibiting the Commission “from closing future meetings of a similar nature.” Id. The court later found the Commission in contempt for closing a series of budget meetings. Id. at 925. On appeal, the District of Columbia Circuit reversed the contempt finding because the injunction was “susceptible to more than one interpretation” because it did not “identify the characteristics of a future meeting ‘of a similar nature.’ ” Id. at 926.
In NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir.1990), a consent decree barred a group of franchisors, from “[p]assing off, inducing, or enabling others to sell or pass off any heat transfers, garments and/or other items which are not genuine NBA products as and for genuine NBA products.” The district court found the franchisors in contempt. Id. at 31. The franchisees’ had sold counterfeit merchandise, and the district court concluded that, by granting franchises, the franchisors had “enabled” the franchisees to sell the counterfeit merchandise. Id. at 32-33. The First Circuit reversed the contempt finding, declining to read the term “enabling” to “encompass the simple granting of the franchise itself’ when doing so would require “reading [the decree] rather strongly against, rather than ‘to the benefit of[,] the person charged with contempt.’ ” Id. at 33 (quoting Ford v. Kammerer, 450 F.2d 279, 280 (3d Cir.1971)).
In Perez v. Danbury Hospital, 347 F.3d 419, 422 (2d Cir.2003), a consent decree prohibited the hospital from “tak[ing] ... action, directly or indirectly, to limit, preclude or obstruct the plaintiffs ... from practicing neonatology at Danbury Hospital .... ” (emphasis added). The district court found the hospital in contempt of the decree because doctors practicing at the hospital had “encouraged obstetricians in two private practice groups” to obstruct the plaintiffs and thus had “indirectly” obstructed them. Id. On appeal, the Second Circuit reversed the contempt finding because, while the decree clearly prohibited the hospital from “indirectly” obstructing the plaintiffs from practicing neonatology, it did not require that the hospital “tak[e] steps to prevent other doctors from interfering with the [plaintiff] physicians’ practice.” Id. at 424-25.
In Imageware, Inc. v. U.S. West Communications, 219 F.3d 793, 794 (8th Cir.2000), a protective order stated that information designated as confidential may only be used in “preparing for and conducting ... proceedings in this action and for no other purpose.” The district court found Imageware in contempt because it submitted copies of documents containing confidential information to the Federal *898 Communications Commission in another proceeding. Id. at 795-96. On appeal, the Eighth Circuit reversed the contempt finding because “a reasonable person could have read the order as a whole” not to prohibit Imageware’s conduct. Id. at 797. In reaching this conclusion, the court relied on a provision not addressed in the parties’ briefs which permitted confidential information to be “offered into evidence in open court unless the Designating Party obtains an appropriate protective order from the Court.” Id. at 795, 797. The court concluded that, based on this provision, the alleged contemnors “could reasonably, even if perhaps erroneously, have believed that [the documents in question] were not subject to [the protective order]” because they were offered into evidence in open court without objection. Id. at 797.
In each one of these cases, the language of the injunction could be read to cover the accused conduct, but the court of appeals held that the accused infringer could reasonably interpret it as not covering the accused conduct. These cases establish that contempt cannot be based on an order susceptible to two reasonable readings, one of which does not cover the accused conduct. There are numerous additional circuit cases in which courts have reversed a contempt finding because the injunction or decree does not clearly prohibit the accused conduct.[4]
With respect, these numerous Supreme Court and Court of Appeals cases directly refute the majority’s manifestly incorrect statement that “the burden was clearly on EchoStar to seek clarification or modification from the district court.” Maj. Op. at 886. In many of the cases discussed above no such challenge was even attempted before the contempt proceeding.[5] And even in cases where there was an attempt to clarify prior to contempt proceedings, the court reversed the contempt finding without attributing any significance to the attempt to clarify.[6] None of these cases *899 held or suggested that the failure to take an appeal or seek modification before the contempt proceeding constituted a waiver of the requirement that the injunction clearly prohibit the accused conduct. Indeed, in our own decision in Abbott, such an appeal had been taken, and the injunction had been affirmed, yet we reversed the contempt finding on the ground that the injunction did not clearly prohibit the conduct on which the contempt allegation was founded. See 503 F.3d at 1377. Thus, the burden lies on the party seeking to enforce the order to “establish that ... the order the contemnor failed to comply with is clear and unambiguous ..," King v. Allied Vision Ltd., 65 F.3d 1051, 1058 (2d Cir.1995),[7] and “[t]he failure of the equity court to spell out in a decree’s text the specific obligations resting upon the defeated litigant is fatal to any contempt proceeding,” H.K. Porter, 568 F.2d at 27.
Apart from its reliance on McComb, the majority attempts to deal with this established authority in part by discussing cases dealing with the validity of an overly broad injunction, which are distinct from cases involving the requirement that the injunction clearly prohibit the accused conduct. For example, in Walker v. Birmingham, 388 U.S. 307, 317, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court rejected a validity challenge, but affirmed the contempt finding because “[t]he injunction in all events clearly prohibited [the accused conduct].” Id. at 317, 87 S.Ct. 1824.[8] Here we are dealing with a challenge to the application of the injunction, not a challenge to its validity. Where the majority does discuss the cases recognizing that lack of clarity is a defense to contempt, it is unable to meaningfully distinguish them.[9]
*900 Ironically, nothing more clearly demonstrates the majority’s error than the fact that the very circuit cases on which the majority relies recognize the essential principle that contempt is improper where the injunction does not clearly prohibit the accused conduct. The cases even characterize this principle as “well settled.” See Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 646 F.2d 800, 808 (2d Cir.1981). For example, in Perfect Fit, Acme argued that contempt was improper because it had no knowledge of the terms of the injunction, not having received the copies of the injunction mailed by the court. Id. The Second Circuit rejected Acme’s argument, noting (in the language quoted by the majority at page 21) that “a litigant has a duty to follow the progress of an action and to inform himself of the terms of an order [entered against him].” Id. at 805. But at the same time, the court explicitly recognized that “[i]t is indeed well settled that a person cannot be held in contempt of an order ... if the terms of the order are unclear or ambiguous.” Id. at 808 (emphasis added). In support, the court cited International Longshoremen’s, 389 U.S. at 75-76, 88 S.Ct. 201, and its own prior decision in Powell v. Ward, 643 F.2d 924, 931 (2d Cir.1981), which similarly recognized that “the [contempt] power may properly be exercised only if the order is clear and unambiguous.” Applying this standard, the court in Perfect Fit affirmed the contempt finding only because it found that the order was not “too vague.” 646 F.2d at 809-10.
Similarly, the court in Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1223 (8th Cir.2006) (cited by the majority at page 883), stated that “[a] contempt order must be based on a party’s failure to comply with a clear and specific underlying order.” (emphasis added and internal quotation marks omitted). In support, the court cited its own prior decision in International Brotherhood of Electrical Workers v. Hope Electrical Corp., 293 F.3d 409, 418 (8th Cir.2002), which also specifically recognized that “contempt orders must be based on a party’s failure to comply with a clear and specific underlying order,” and affirmed the contempt finding because it could “find no lack of clarity within ... the underlying orders sought to be enforced.” In Chaganti, the finding of contempt was affirmed only after the court found that “the district court’s settlement order had the clarity and specificity required to be enforced by contempt sanctions.” Chaganti, 470 F.3d at 1224.[10] The Sixth Circuit, in Polo Fashions, Inc. v. Stock Buyers Int’l, Inc. 760 F.2d 698, 700 (6th Cir.1985) (cited by the majority at page 883), recognized that “the validity of the injunction is not an issue in ... contempt [proceedings],” but also that an injunction must be “sufficiently clear and specific to provide the basis for ... contempt.” The finding of contempt was affirmed only after the court found that “the preliminary injunction was sufficiently clear and specific.” Id. In Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 517 (5th Cir.1969) (cited by the majority at page 884), the court explicitly recognized the clarity requirement and affirmed the contempt finding only after determining that the requirement was met. Specifically, the court stated:
*901 We also find that the injunction conformed to the requirements of F.R.Civ.P. 65(d). Rule 65(d) requires that an injunction have specificity so that those constrained to follow it will not want for guidance. The injunction in question is not lacking in clarity. Its interdiction of oppressive child labor is not vague, and its command that Gulf King keep and preserve records is clearly understandable.
Id. at 517 (internal citations omitted). It was only after finding the injunction sufficiently clear that the court noted the possibility of an appeal of the injunction. Id.
Finally, the majority urges that permitting clarity to be addressed in contempt proceedings “would indeed impose an unnecessarily heavy burden on district courts to draft immaculate orders.” Maj. Op. at 887. I do not suggest that the district court must draft perfect orders, but that it be required to draft orders that are sufficiently clear to provide notice of “what the court intends to require and what it meant to forbid.” Int’l Longshoremen’s, 889 U.S. at 76, 88 S.Ct. 201. Such a requirement, which is itself reflected in Rule 65(d), in no way alters the burden already placed on district courts. Not only is this level of clarity required in injunctions generally, but it is especially important in the context of patent infringement injunctions where the need to ensure that injunctions remain enforceable must be balanced against the need to ineentivize design-around innovation.
In sum, TiVo was obligated to show that the injunction clearly prohibited the substitution of new noninfringing software. It did not remotely satisfy this burden. Under such circumstances, contempt is improper because there is at least a fair ground of doubt as to the wrongfulness of EchoStar’s conduct.
II
The majority vacates the district court’s finding of contempt for violation of the infringement provision and remands to the district court to determine colorable differences and infringement. In my view, remand is wholly unnecessary because it is clear that there are colorable differences between the features relied upon to establish infringement and the modified features of the newly accused products.
The majority correctly describes the colorable differences requirement as involving a comparison between the specific features relied upon to establish infringement and the modified features of the newly accused product on a limitation-by-limitation basis. The party seeking to enforce the injunction bears the burden of demonstrating what products and features of those products were found to infringe. Here, it is undisputed that the feature found to satisfy the “parsing” limitation— the start-code-detection feature — was removed from EehoStar’s modified products. Further, TiVo does not argue that the start-code detection feature was merely replaced with a solution that was known in prior art. The statistical-estimation feature, which replaced the start-code-detection feature, was not present in original software and was not earlier viewed by TiVo as being capable of performing the required function. In fact, TiVo had earlier characterized the start-code detection feature, which was removed, as “required for a viable DVR.” J.A. 1556. Therefore, it is clear that the statistical-estimation feature is more than substantially different from the start-code-detection feature.
Because the sole feature accused of satisfying the parsing limitation was removed from the modified product and replaced with a feature that is both substantially different and a solution not known in the prior art, the two products are necessarily *902 more than colorably different on the basis of the parsing limitation alone. As a result, the infringement provision of the injunction was not violated and there is no need for a remand.
Ill
My final disagreement with the majority lies in the affirmance of the $90 million sanctions award despite the fact that the award is based on a finding of contempt that the majority reverses. The majority nonetheless affirms the district court’s sanctions award in its entirety because it concludes that the “award was made on alternative grounds, i.e., for violation of either of the two separate provisions of the injunction.” Maj. Op. at 890. The contempt judgment and the sanctions imposed by the district court, however, rest on two separate and distinct findings of contempt, neither of which standing alone is sufficient to sustain the sanctions award.
In its motion for sanctions, TiVo calculated damages based on both the models listed in the injunction and EchoStar’s “VIP models” (a group of products that were not adjudged to infringe nor listed in the permanent injunction). See Decl. of Keith R. Ugone, Ph.D. In Support of TiVo’s Motion for Sanctions for Contempt at 3-5 and Ex. 4, TiVo, Inc. v. Dish Network Corp., 655 F.Supp.2d 661 (E.D.Tex.2009), ECF No. 947 [hereinafter TiVo’s Sanctions Calculations]. TiVo apparently viewed EchoStar’s activities with respect to the VIP models as a violation of the infringement provision because the VIP models were “no more than colorably different” from the models found to infringe. The district court specifically referenced and relied on TiVo’s calculations when it awarded sanctions. TiVo, Inc. v. Dish Network Corp., 655 F.Supp.2d 661, 666 (E.D.Tex.2009) (relying on the calculations submitted by TiVo’s expert (“Dkt. No. 947”), which included the VIP models in its calculations, to support the court’s estimation of the total award at a rate of $2.25 per DVR subscriber). Because the VIP models were not specifically listed in the injunction, there is no plausible argument that EchoStar’s activities with respect to these models constituted a violation of the disablement provision. Thus, the portion of the sanctions award with respect to the VIP models was based solely on EchoS-tar’s alleged violation of the infringement provision.
Additionally, the disablement provision applied only to those products “that [had] been placed with the end user or subscriber” at the time the injunction issued. J.A. 162. But the sanctions award was based in part on DVR subscribers acquired after the date the injunction became effective. See TiVo, 655 F.Supp.2d at 666; TiVo’s Sanctions Calculations at Ex. 4. Those later sanctions were obviously based on the alleged violation of the infringement provision of the injunction, not the disablement provision. However, the majority reversed the contempt finding with respect to the infringement provision; thus, it is inappropriate to affirm sanctions for violation of that provision.[11]
Because it is clear that the sanctions award was based in large part on EchoS-tar’s alleged violation of the infringement *903 provision, the award cannot be sustained based on the alleged violation of the disablement provision alone. Even under the majority’s view, a remand is essential to recalculate the sanctions award.
APPENDIX
IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS MARSHALL DIVISION TIVO INC., Plaintiff, v. ECHOSTAR COMMUNICATIONS CORP., et. al., Defendants.
2:04-CV-l-DF

FINAL JUDGEMENT AND PERMANENT INJUNCTION

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the jury verdict delivered on April 13, 2006 and with the Court’s contemporaneously filed orders, the Court thereby enters judgment for Plaintiff against Defendants for infringement of U.S. Patent No. 6,233,389 (“'389 patent”), claims 1, 5, 21, 23, 32, 36, 52, 31 and 61 (“the Infringed Claims”) by Defendants’ following DVR receivers (collectively “the Infringing Products”): DP-501; DP-508; DP-510; DP-522; DP-625; DP-721; DP-921; and the DP-942.
IT IS THEREFORE ORDERED THAT Plaintiff shall have and recover from Defendants, jointly severally, the total sum of $73,991,964.00, together with prejudgment interest at the rate of prime, said prejudgment interest in the total sum of $5,367,544.00 [1], together with supplemental damages in the amount of $10,317,108.00, together with post-judgment interest on the entire sum calculated pursuant to 28 U.S.C. § 1961. The amounts awarded in this judgment shall bear interest from the date of judgment and the lawful federal rate.
IT IS FURTHER ORDERED THAT
Each Defendant, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice hereof, are hereby restrained and enjoined, pursuant to 35 U.S.C. § 283 and Fed. R.CivJP. 65(d), from making, using, offering to sell or selling in the United States, the Infringing Products, either alone or in combination with any other product and all other products that are only colorably different therefrom in the context of the Infringed Claims, whether individually or in combination with other products or as a part of another product, and from otherwise infringing or inducing others to infringe the Infringed Claims of the '389 patent.
Defendants are hereby FURTHER ORDERED to, within thirty(30) days of the issuance of this order, disable the DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) in all but 192,708 units of the Infringing Products that have been placed with an end user or subscriber. The DVR functionality, i.e., disable all storage to and playback from a hard disk drive of television data) shall not be enabled in any new placements of the Infringing Products.
*904 Defendants shall forthwith provide written notice of this judgment, and the injunction ordered herein, to: their officers, directors, agents, servants, representatives, attorneys, employees, subsidiaries and affiliates, and those persons in active concert or participation with them, including any and all manufacturers, distributors, retailers, and service providers who have been involved in the making, using, selling, offering for sale or importing of any Infringing Products; and to all other persons or entities involved in any way with the making, using, selling, offering for sale or importing of any Infringing Products. Defendants shall take whatever means are necessary or appropriate to ensure that this order is properly complied with.
This injunction shall run until the expiration of the '389 patent.
This Court retains jurisdictions over Defendants to enforce any and all aspects of this Judgment and Permanent Injunction.
The Court further retains jurisdiction to award Plaintiff amounts for supplemental damages, interest, costs, attorneys fees and such other or further relief as may be just and proper.
All relief not specifically granted herein in denied. All pending motions not previously ruled on are denied. This is a Final Judgment and is appealable.
SIGNED this 17th day of August, 2006.
/s/ David Folsom
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

. See also State Indus., 751 F.2d at 1236 ("One of the benefits of a patent system is its so-called 'negative incentive’ to 'design around' a competitor’s products, even when they are patented, thus bringing a steady flow of innovations to the marketplace."); Brief of Amicus Curiae Federal Trade Commission on Rehearing En Banc at 4-10, TiVo, Inc. v. EchoStar Corp., No. 2009-1374 (Fed.Cir. Nov. 11, 2010) (emphasizing the importance of incentives to design-around innovation).

. The majority’s treatment of the latter provision is confusing. The majority treats the enablement provision as though it is part of the disablement provision, although it clearly was not the basis for a contempt finding. "By not disabling DVR functionality in adjudged receivers that had been placed with end-users, EchoStar failed to comply with the plain language of this Court’s order.” Contempt Opinion, 640 F.Supp.2d at 874.

. The majority suggests that EchoStar's reading of the disablement provision is “contrary to the most natural reading of the provision” because “it would necessarily render the injunction vague on its face.” Maj. Op. at 886. The exact same point, however, could be made with respect to the reading of the disablement provision advanced by TiVo and the district court.

. See, e.g., United States v. Saccoccia, 433 F.3d 19, 29 (1st Cir.2005) (reversing a contempt finding because "the Order, when issued, could have been interpreted in various ways”); Gilday v. Dubois, 124 F.3d 277, 285-86 (1st Cir.1997) (narrowly construing a consent decree in favor of the alleged contemnor and reversing a contempt finding because the consent decree was "susceptible to various reasonable interpretations”); Gates v. Shinn, 98 F.3d 463, 467-72 (9th Cir.1996) (reversing a contempt finding because the consent decree lacked specificity, which “is a predicate to a finding of contempt”); Harris v. City of Phila., 47 F.3d 1342, 1349, 1352 (3d Cir.1995) (noting that “[sjpecificity in the terms of consent decrees is a predicate to a finding of contempt,” and reversing a contempt finding because consent decree did not contain "an unambiguous provision” requiring the conduct forming the basis of the contempt allegation); Dollar Rent A Car v. Travelers Indent. Co., 774 F.2d 1371, 1376 (9th Cir.1985), (reversing a contempt finding because it was not "reasonably inferrable” from the injunction that the accused conduct was a violation); see also Salazar v. D.C., 602 F.3d 431, 442 (D.C.Cir.2010) ("Civil contempt may be imposed only when the underlying order is clear and unambiguous.”); H.K. Porter Co., Inc. v. Nat’l Friction Prods. Corp., 568 F.2d 24, 27 (7th Cir.1977) (refusing to hold the defendants in contempt because the order did not "describe in reasonable detail ... the act or acts sought to be restrained”); Doe v. Gen. Hosp. of D.C., 434 F.2d 423, 424-25 (D.C.Cir.1970) (refusing to hold the defendants in contempt because of a "possible confusion” regarding the meaning of the preliminary injunction).

. See Granny Goose, 415 U.S. 423, 94 S.Ct. 1113; Salazar, 602 F.3d431; Imageware, 219 F.3d 793; Gilday, 124 F.3d 277; Gates, 98 F.3d 463; Harris, 47 F.3d 1342; NBA Props., 895 F.2d 30; Common Cause, 674 F.2d 921; N.Y. Tel. Co., 445 F.2d 39; Doe, 434 F.2d 423.

. See Int’l Longshoremen’s, 389 U.S. at 70-71, 76, 88 S.Ct. 201 (mentioning that the alleged contemnors unsuccessfully attempted to obtain clarification, but not linking this attempt to the court's ability to enforce the clarity requirement); Abbott, 503 F.3d at 1377, *899 1382-83 (mentioning that the issuance of the injunction was appealed, but not linking this event to the court’s ability to enforce the clarity requirement); Saccoccia, 433 F.3d at 30-31 (mentioning the alleged contemnor’s attempts to clarify the meaning of the injunction with the U.S. Attorney, but not linking these attempts to the court’s ability to enforce the clarity requirement); Perez, 347 F.3d at 422, 423-25 (mentioning the alleged contemnor’s motion to clarify the scope of the injunction, but not linking this attempt to clarify to the court’s ability to enforce the clarity requirement); Dollar, 774 F.2d at 1374, 1376 (mentioning the alleged contemnor's appeal of the preliminary injunction, but not linking the appeal to the court's ability to enforce the clarity requirement).

. See also Latino Officers Ass’n City of N.Y., Inc. v. N.Y.C., 558 F.3d 159, 164 (2d Cir.2009) ("The movant must establish that ... the order the contemnor failed to comply with is clear and unambiguous....”) (emphasis omitted); Saccoccia, 433 F.3d at 26 (same); Perez, 347 F.3d at 423 (same); F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir.1999) (same); Gilday, 124 F.3d at 282 (same); Porrata v. Gonzalez-Rivera, 958 F.2d 6, 8 (1st Cir.1992) (same).

. See also, Szabo v. U.S. Marine Corp., 819 F.2d 714, 716-18 (7th Cir.1987), in which the alleged contemnor challenged the validity, not the clarity, of an injunction. The court affirmed the contempt finding, holding that the validity of the injunction was not a defense to contempt. Id. at 718-21.

. The majority attempts to distinguish both Saccoccia and New York Telephone on the ground that they involved "ex parte orders being enforced against nonparties to the order.” Maj. Op. at 888. This is simply not true. In Saccoccia, the injunction was specifically directed at the defendants "and their agents and attorneys.” 433 F.3d at 22. The attorneys were later held in contempt. Id. In New York Telephone, the union, which was a party to the original dispute, was the party later found in contempt. 445 F.2d at 41-43. Further, the majority's suggestion that consent decrees are somehow more susceptible to attack on vagueness grounds is surprising both because the parties themselves draft the language of a consent decree and thus control the clarity with which it is drafted, and because there is no authority to support this proposition.

. The language relied upon by the majority appears in a confusing footnote, in which the court erroneously cites Perfect Fit for the proposition that the alleged contemnor "had an obligation to seek clarification of the court’s order.” Id. at 1224 n. 2. This footnote is inconsistent with both the text of the opinion and Perfect Fit, both of which explicitly recognize that contempt is improper where the order does not clearly reach the accused conduct.

. The majority confusingly suggests that the district court imposed sanctions for violation of the portion of the injunction prohibiting the enablement of DVR functionality in any new placements of the Infringing Products. Maj. Op. at 890 n. 10. Nowhere does the district court, however, suggest that EchoStar violated the injunction by improperly enabling the DVR functionality in new placements of the Infringing Products. See generally Contempt Opinion, 640 F.Supp.2d 853; TiVo, Inc. v. Dish Network Cotp., 655 F.Supp.2d 661.

. The prejudgment interest and supplemental damages award herein do not cover the time period from August 1, 2006 to the date of entry of this Order. Consistent with the contemporaneously filed order addressing prejudgment interest and supplemental damages, the Court will award additional prejudgment interest and supplemental damages after receipt of additional information from Plaintiffs damages expert.